COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Elder and Fitzpatrick

JACQUELINE MILES

v.   Record No. 1617-95-4                    MEMORANDUM OPINION[*]
                                                  PER CURIAM
FAIRFAX COUNTY DEPARTMENT                      MAY 21, 1996
 OF HUMAN DEVELOPMENT

                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Stanley P. Klein, Judge

            (John K. Bancroft, on brief), for
            appellant.

            (Robert Lyndon Howell, Deputy County
            Attorney; Cynthia L. Tianti, Assistant
            County Attorney, on brief), for appellee.

            (Deborah A. Wilson; Wilson & Zepecki, on
            brief), Guardian ad litem for Minor
            Children.


     Jacqueline Miles appeals the decision of the circuit court
terminating her residual parental rights to four of her children.
Miles contends that there was insufficient evidence to support
the trial court's conclusion to terminate her parental rights
pursuant to Code § 16.1-283(B)(2) and (C)(2).  Upon reviewing the
record and briefs of the parties, we conclude that this appeal is
without merit.  Accordingly, we summarily affirm the decision of
the trial court.  Rule 5A:27.

     "When addressing matters concerning a child, including the
termination of a parent's residual parental rights, the paramount

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

consideration of a trial court is the child's best interests."
Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123,
128, 409 S.E.2d 460, 463 (1991).  The trial courts "'are vested
with broad discretion in making the decisions necessary to guard
and to foster a child's best interests.'"  Id. (citation
omitted).  On appeal, when the trial court has heard the evidence
ore tenus, its judgment will not be disturbed unless plainly
wrong or without evidence to support it.  Id.

Pursuant to the provisions of Code § 16.1-283(B)(2), the
trial court found that there was clear and convincing evidence
that termination of Miles' parental rights was in the best
interests of the children, and that the neglect or abuse suffered
by the children presented a serious and substantial threat to
their life, health or development.  The court also found that it
was not reasonably likely that the conditions which resulted in
the children's neglect or abuse "can be substantially eliminated
so as to allow the children's safe return to their parents within
a reasonable amount of time."  The court further found, pursuant
to the provisions of Code § 16.1-283(C)(2), that clear and
convincing evidence established that Miles, without good cause,
had been unwilling or unable "within a reasonable period not to
exceed twelve months to remedy substantially the conditions which
led to the children's foster care placement, notwithstanding the
reasonable and appropriate efforts of social, medical, mental
health or other rehabilitative agencies to such end."

Under Code § 16.1-283(B), proof that a parent has not responded to or followed through on appropriate rehabilitative efforts and services offered through the Department or other agencies is prima facie evidence that the abusive or neglectful conditions have not been corrected. Code § 16.1-283(B)(2)(c).

Similarly, under Code § 16.1-283(C), proof that a parent

> without good cause, . . . failed or . . . [was] unable to make reasonable progress towards the elimination of the conditions which led to the [children's] foster care placement in accordance with [her] obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent . . . and a social, medical, mental health or other rehabilitative agency

is prima facie evidence that the parent was unwilling or unable to remedy the underlying conditions. Code § 16.1-283(C)(3)(b).

The four children were taken into foster care following evidence of physical abuse of an older brother. Subsequently, all four children were found to be physically abused or neglected. L. M. was also found to be sexually abused. Dr. Colletta, who did a psychological evaluation of L. M., W. S. and J. P. as well as an intake evaluation of Miles, testified that the children had a number of special needs. L. M., who was four at the time of the evaluation, viewed the world "as a dangerous place where children have to protect themselves from being hurt." Dr. Colletta testified that L. M. will have to learn to trust and to believe that adults will consistently care for her.

3

Because L. M. is at risk for an oppositional defiant disorder, she needs a household where "there is enough structure and routine that she comes to believe that adults actually do have authority over her." While L. M. indicated she loved her mother, she "was equally clear that she did not want to go home with her. She said it would be bad, really bad and dangerous if I went home." W. S., who was five when he was evaluated, shows strong indications of learning disabilities and will need special education services. W. S. is emotionally withdrawn, demonstrates passive/aggressive behavior, and has serious emotional problems including issues of trust and rage. Dr. Colletta testified that anyone who cared for W. S. "is going to have to work very hard to pull him out of his withdrawal."

J. P. suffers from attachment disorder, caused by the lack of attachment to a stable caretaker in the initial months of his life. He also has severely delayed speech. J. P. will need special education services and an in-home program of language stimulation.

Q. M. also suffers from emotional problems arising from the physical abuse he suffered while in Miles' care. Q. M. did not feel safe with his mother, was anxious about who would provide for him and suffered from nightmares and sleep disorders. Miles contends there was insufficient evidence to establish that she was unwilling or unable to remedy the underlying conditions which led to the abuse, or that she had failed to make reasonable

4

progress towards the elimination of those conditions in accordance with her obligations under the children's foster care plans. Miles participated in parental training services, mental health services, and drug and alcohol abuse counselling through the Department. Miles also had obtained a full-time job at which she was doing well. Miles' testimony at trial indicated her housing arrangements were not yet stable.

Despite her participation in parenting classes and therapy, Miles was unwilling or unable to acknowledge the special needs of her children. Dr. Morote, who diagnosed Miles as suffering from a mixed narcissistic/anti-social personality disorder, testified that Miles did not believe she needed any therapy and did not feel responsible for her children's problems, including the abuse. Dr. Colletta also testified that Miles denied her children had special needs and was unable to make any specific plans to assist her children if they were returned to her care.

> In its ruling from the bench, the trial court stated that the fact that you could say to me that there would be no problems if the kids came home with you is perhaps the best evidence of the fact that you do not entirely recognize the needs of your children, and that you do not recognize the changes that you would have to make in your life above and beyond the remarkable progress that you have made to date in order to be able to take care of the special needs of your children.

Miles' inability to acknowledge the extent of her children's needs demonstrated an inability or unwillingness to help the children overcome their problems. Moreover, Miles admitted that

she remained in a relationship with Louis Pinckney despite a court order prohibiting him from having any contact with the children following the initial incident of abuse.

The children have been in foster care since 1992. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." <u>Kaywood v. Dep't of Social Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The trial court found that clear and convincing evidence demonstrated that it was in the best interests of these children to terminate Miles' parental rights. That finding is not plainly wrong or without evidence to support it. Accordingly, the decision of the circuit court is summarily affirmed.

<u>Affirmed.</u>